IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KELLY A. HARRIS,

        Plaintiff,

v.                                                                Civil Action No. 10-1021-RGA

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION

David J. Lyons, Esq., Wilmington, DE, Attorney for Plaintiff.

Charles M. Oberly, III, United States Attorney, Wilmington, DE; Patricia A. Stewart, Special Assistant United States Attorney, Philadelphia, PA, Attorneys for Defendant.

August 21, 2012

*Richard G. Andrews*
ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff, Kelly Harris, appeals the decision of Defendant Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 401-433, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3).

Presently pending before the Court are cross-motions for summary judgment filed by Harris and the Commissioner. (D.I. 18, 20). For the reasons set forth below, the Court denies Harris' motion for summary judgment and grants the Commissioner's motion.

## BACKGROUND

### I. Procedural History

Harris filed her applications for DIB and SSI[1] on February 27, 2004 (D.I. 11 ("Transcript" and hereafter "Tr.") at 19), claiming she had been disabled since August 1, 2003. (Tr. 584). Harris' applications were denied initially on August 25, 2004 and again were denied upon reconsideration on February 11, 2005. (Tr.19). Thereafter, a video hearing was held before an Administrative Law Judge (the "ALJ") on November 2, 2006. (Tr. 19). The ALJ issued an unfavorable decision on March 14, 2007. (Tr. 16-28). The Appeals Council denied Harris' request for review on November 14, 2007. (Tr. 5-7). Plaintiff then filed a complaint in this Court on January 18, 2008. *Harris v. Astrue*, Civ. Act. No. 08-42-JJF. After about a year and additional review, the Commissioner moved to voluntarily remand Harris' claim for additional

---

[1] Eligibility for SSI is derivative of qualification for DIB, so for ease of reference, the Court will refer only to DIB.

2

evaluation. (*Id.*, D.I. 18).

A second video hearing was held before the ALJ on September 29, 2009, and the ALJ issued a second unfavorable decision on October 21, 2009. (Tr. 582-601). The Appeals Council denied review on September 30, 2010, making the ALJ's determination the final decision of the Commissioner. (Tr. 521-23). Harris filed the instant complaint on November 24, 2010. (D.I. 1).

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

Harris was only 29 years old on the date of her alleged disability onset (Tr. 51) and is defined as a younger individual under the Act. *See* 20 C.F.R. §§ 404.1563(c), 416.963. Harris completed the 11th grade, has three children, and was last regularly employed in 2003, although she did have brief periods of employment in 2004 and 2007, working primarily as a cleaner. (Tr. 90, 92).

Harris' detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence. Plaintiff has a long history of mental illness. On November 30, 2000, Harris underwent a 5 day civil commitment following a suicide attempt. (Tr. 139). She was diagnosed with recurrent depressive disorder, aggravated by alcohol abuse. (Tr. 140). Harris was discharged on December 4, 2000 with a prescription for Prozac. She was re-admitted the next day for 8 days of therapy after stating that she could not afford to fill her prescription. (Tr. 160). She was discharged again on December 13, 2000 with a "brighter affect" and "more hopeful" outlook. (Tr. 160).

According to the record, Harris received no additional particular mental health treatment until May 2004. (Tr. 270). On May 6, 2004, Mujib Obeidy, M.D. performed a psychiatric

assessment of Harris. (Tr. 273). He diagnosed her with a mood disorder, assessed a global assessment of functioning (GAF) score of 45, indicating serious symptoms, and admitted her to a partial hospitalization program. (Tr. 274). Harris was discharged from the program two weeks later because she was unable to obtain child care for her children. (Tr. 276). She was diagnosed with bipolar disorder and given prescriptions for Xanax, Lexapro, Depakote, and Trazadone. (Tr. 275-76). Her GAF score upon discharge was 60, indicating mild to moderate symptoms. (Tr. 275).

One week later, Dr. Obeidy noted that Plaintiff had "responded well" to her medications. (Tr. 289). He observed that she was alert, oriented, and cooperative and assessed a GAF score of 50. (Tr. 289). Dr. Obeidy instructed Harris to continue with her medication. (Tr. 289). He also noted, without further explanation, that "Patient is 100% disabled – Prognosis is poor. Disability is expected to last > 12 months." (Tr. 289).

Wellbutrin was added to Harris' prescription regimen sometime between May and August 2004. In August 2004, Harris claimed to have had a seizure, which was determined to have been caused by an adverse reaction to Wellbutrin. (Tr. 308). A brain MRI was normal. (Tr. 431).

Harris did not seek medical treatment again until January 2005. (Tr. 315). David Kalkstein, M.D., Ph.D., noted that she was calm, was in a "fairly good" mood, and had goal-directed thought. (Tr. 315). He diagnosed bipolar disorder and assessed a GAF score[2], noting mod[erate] symptoms. (Tr. 315).

On June 22, 2006, Harris visited the emergency room because of an "altered mental

---

[2] The ALJ read Dr. Kalkstein's notes to indicate a GAF of "about 55." (Tr. 589). The Commissioner read them to indicate a GAF of "55-58." (D.I. 22 at 6). The Court cannot decipher them.

4

status." (Tr. 659). She admitted taking 3 Xanax pills (Tr. 664) but also tested positive for cocaine and opiates. (Tr. 676). Doctors determined that Harris' medication caused her altered mental state and discharged her to home. (Tr. 668).

On November 27, 2006, Harris was examined by state agency consultant, Brian Simon, Psy.D. (Tr. 435). Harris claimed to have manic periods followed by sleeping for 12-40 hours. (Tr. 435). She stated that she got along well with other family members except when she had "moods." (Tr. 436). Harris was unable to remember all of the names of her medications but denied any side effects. (Tr. 437). She further admitted that her only treatment for bipolar disorder was medications prescribed by her primary care physician. (Tr. 437). She also reported a history of having been arrested "either two, three, or four" times in the past. (Tr. 437). Harris stated that she held a job for six years and stopped working to care for her oldest child. (Tr. 437). She further denied any history of emotional deterioration at work and reported that she was able to get along well with others during the time that she was employed. (Tr. 438). Harris also reported that she was able to bathe herself independently; perform simple chores including doing the dishes and the laundry, cooking, and driving a car. (Tr. 441).

Dr. Simon observed that Harris was well-groomed, cooperative, and appeared to give her best efforts during the examination. (Tr. 438). Her speech was normal in rate and goal directed; she had no slurring or articulation problems; her activity level was appropriate; she had no hyperactivity or psychomotor agitation; she did not seem distractible; and she was oriented in all spheres. (Tr. 438). Dr. Simon indicated that Harris' intellectual functioning was at the lower end of the borderline range. (Tr. 439). Dr. Simon concluded that she could respond appropriately to others at work and, based on cognitive testing and mental status/presentation, would have only a

slight limitation in performing work involving only short/simple instructions. (Tr. 441-42).

In January 2007, Harris visited Patricia Lifrak, M.D., for an initial consultation. (Tr. 684). Harris reported that Xanax and Adderall helped her "a little." (Tr. 684). Dr. Lifrak noted that Harris was cooperative, had good eye contact, and normal speech. (Tr. 685). Harris did not return to Dr. Lifrak until October 8, 2007, when she reported that she "ran out of medication 3 weeks ago." (Tr. 689). Dr. Lifrak indicated that Harris' progress was "noncompliant" and that she had not been for medication check visits. (Tr. 689). Harris also failed to appear for visits on November 19, 2007 and January 10, 2008. (Tr. 689).

Harris returned to Dr. Lifrak on January 24, 2008, claiming that she still had mood swings. (Tr. 688). Dr. Lifrak referred her to outpatient therapy. (Tr. 688). On this date, Dr. Lifrak completed a check form for the Delaware Department of Social Services (DSS), stating that Harris was unable to work for 3 months due to her bipolar disorder. (Tr. 691). Harris did not attend appointments scheduled for April 28 and June 17, 2008. (Tr. 686).

On June 19, 2008, Dr. Lifrak added Lexapro to Harris' medication regimen. (Tr. 683). She completed a second DSS certification indicating that Plaintiff would be unable to work for 3 months but would not require the presence of another individual in the home to care for her. (Tr. 690). On July 30, 2008, Harris stated that she did not like taking Lexapro, and Dr. Lifrak prescribed Effexor. (Tr. 682).

By October 7, 2008, Harris indicated that the Effexor helped her anxiety by making her feel calmer and less depressed. (Tr. 708). Although Harris indicated improved symptoms, Dr. Lifrak completed another DSS form indicating that she was unable to work for 3 months. (Tr. 745). In December 2008, Dr. Lifrak instructed Harris to discontinue Ambien and completed an

additional DSS form. (Tr. 733, 744). Harris failed to appear for a January 2009 appointment and did not return to Dr. Lifrak until April 2009, when she reported that she had to stop taking Seroquel due to a "swollen liver." (Tr. 732-33). Dr. Lifrak prescribed Topamax and Risperdal. (Tr. 732).

Harris saw Dr. Simon on April 21, 2009 for a second consultative examination. She claimed that her medications resulted in "significant" side effects including causing her "jaw to lock up, resulting in" a "broken tooth"; causing her "hip, back, and right leg to 'lock up'"; and causing her to "'jam[]' her right leg" causing it "to be a foot shorter than her other leg." (Tr. 715). A mental status examination was generally unremarkable except for her memory. (Tr. 717). Dr. Simon concluded that her reported diagnosis of bipolar disorder needed to be ruled out and that she appeared "to be malingering given her admitting to a wide range of symptoms that do not correspond to a particular psychiatric diagnosis." (Tr. 717). Dr. Simon assessed a GAF score of 57, indicating moderate symptoms. (Tr. 718). He opined that she remained capable of performing simple tasks at work. (Tr. 718, 721-22).

Harris missed an April 29, 2009 appointment with Dr. Lifrak. (Tr. 731). On May 4, 2009, Harris reported that she had to stop Topamax and Risperdal due to side effects. Dr. Lifrak increased Harris' Xanax and prescribed Neurontin. (Tr. 731). Harris also missed appointments on June 8 and 10, 2009. (Tr. 731).

On June 23, 2009, Harris reported that she had been sleeping more, but she felt stressed because her ex-husband lost his job. (Tr. 720). Dr. Lifrak adjusted her Effexor and Xanax dosages and completed another DSS form indicating that she could not work for 3 months. (Tr. 730, 743).

On July 22, 2009, Harris reported that she was still under stress because of financial issues and asked if she could have a prescription for Valium. (Tr. 729). Dr. Lifrak declined, but gave Harris a prescription for Abilify. (Tr. 729). Dr. Lifrak adjusted Harris' Abilify dosage on August 11, 2009. (Tr. 728). Harris missed a September 2, 2009 appointment with Dr. Lifrak.

### B. ALJ's Decision

In his October 21, 2009 decision, the ALJ found that Harris had the severe impairments of bipolar disorder, borderline intellectual functioning, and substance abuse. (Tr. 586). The ALJ further found that Harris had the residual functional capacity ("RFC") to perform a range of work at all exertional levels, with the following limitations: occasionally alternate between sitting and standing positions, avoid working at heights and/or with hazardous machinery, and simple, routine, unskilled work that requires no more than occasional interaction with supervisors, co-workers, and/or the general public. (Tr. 595). Based on this RFC, the ALJ determined that Harris was able to perform her past relevant work as a janitor/cleaner. (Tr. 599). Alternatively, the ALJ determined that Harris could perform a significant number of jobs existing in the national economy, including packer, inspector, and unarmed security guard. (Tr. 599-600). Accordingly, the ALJ concluded that Harris was not disabled within the meaning of the Act. (Tr. 600).

### STANDARD OF REVIEW

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546,

8

552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.22d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citations omitted).

The Third Circuit has explained that a

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., evidence offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## DISCUSSION

### I. Disability Determination Process

Title II of the Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance

9

benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). To qualify for DIB, the claimant must establish that he or she was disabled prior to the date he or she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). A claimant is disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. If the claimant is

10

not suffering from a severe impairment or a severe combination of impairments, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, if the claimant's impairments are severe, the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. If a claimant's impairment or its medical equivalent matches an impairment in the listing, then the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments or impairment combination are not listed or medically equivalent to any listing, then the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by her or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. If the claimant is able to return to her past relevant work, the claimant is not disabled. *See id.*

If the claimant is unable to return to past relevant work, step five requires the Commissioner to determine whether the impairments preclude the claimant from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating "not disabled" finding if claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner

must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert ("VE"). *See id.*

## II. Analysis

Harris argues that the ALJ's decision is not supported by substantial evidence. Specifically, Harris argues that the ALJ improperly concluded that she has a RFC for work, improperly discounted her credibility and did not properly evaluate her testimony regarding her symptomatology, and improperly ignored relevant testimony from the vocational expert.

### A. The ALJ Set Forth Sufficient Reasons to Conclude That Plaintiff Has RFC For Work

#### 1. The ALJ Set Forth Sufficient Reasons To Discount Dr. Obeidy's Opinion

Harris first asserts that the ALJ erred by not giving controlling weight to the statement of her treating physician, Dr. Obeidy, that she was "100% disabled." (D.I. 19 at 10). The ALJ gave little weight to this statement because it was inconsistent with and not supported by the evidence in the record. (Tr. 289, 593). It is true that, "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). It is also true that controlling weight will be given to a treating physician's opinion where it is supported by, and not inconsistent with, other substantial evidence of record. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). However, a conclusory statement that a claimant is "disabled" is never entitled to special weight. *See Griffin*

*v. Comm'r*, 305 F. App'x 886, 891 (3d Cir. 2009) ("[A] physician's statement that a claimant is "'disabled' or 'unable to work' does not mean that we will determine that [the claimant] is disabled.") (quoting 20 C.F.R. § 404.1527(d)(1)). The determination of disability is a legal determination reserved for the Commissioner. *See id.*; *see also* 20 C.F.R. § 404.1527(d)(1).

The ALJ is entitled to disregard treating physician opinions that are conclusory, unsupported by the medical evidence, or internally inconsistent. *Griffin*, 305 F. App'x at 891. As the ALJ discussed, Dr. Obeidy's treatment notes show that Plaintiff had not been taking medication prior to May 6, 2004, had mood swings because she was using diet pills and Fioricet, and responded "well" to her medication regimen. (Tr. 273, 286, 289, 588). After attending the partial hospitalization program, Harris' GAF score improved from 45 to 60, indicating only borderline mild-to-moderate symptoms. (Tr. 274, 275, 588). She was discharged due to an inability to find child care and no indication was made that she was unable to care properly for her children. (Tr. 275, 285, 588). This evidence is inconsistent with Dr. Obeidy's statement that Harris was totally disabled. The ALJ had an articulated basis (Tr. 593) to discount Dr. Obeidy's disability assessment.

Harris also asserts that the ALJ's assignment of "little weight" to Dr. Obeidy's statement that Harris was disabled in his opinion on remand was inconsistent with his giving Dr. Obeidy's opinions "significant weight" in his first opinion. (D.I. 19 at 10). Harris, however, mischaracterizes the ALJ's treatment of Dr. Obeidy's opinion in the ALJ's first opinion. The ALJ did not assign any weight to Dr. Obeidy's statement that Harris was disabled in the first opinion. Rather, the ALJ discussed the GAF scores that Dr. Obeidy had assessed and gave significant weight to the doctor's findings that Harris "had moderate mental impairment

symptoms and that her mental impairments respond well to treatment." (Tr. 26). The ALJ's analysis of Dr. Obeidy's opinions in 2009 was not inconsistent with his analysis of them in 2007.

Accordingly, the ALJ set forth legally sufficient reasons to afford little weight to Dr. Obeidy's statement that Plaintiff was disabled.

### 2. The ALJ Set Forth Sufficient Reasons To Discount Dr. Lifrak's Opinion

Harris next asserts that the ALJ erred by not giving controlling weight to Dr. Lifrak's opinion that she was disabled. (D.I. 19 at 10-11). As the ALJ noted, Dr. Lifrak completed medical certifications in connection with Harris' request for Medicaid. (Tr. 598, 690-91, 743-45). These are "check the box" forms. The Commissioner's regulations expressly provide that "a decision by . . . any other governmental agency about whether [the claimant is] disabled . . . is based on its rules and is not our decision about whether you are disabled. . . . We must make a disability . . . determination based on social security law." 20 C.F.R. §§ 404.1504, 416.904; *see also Griffin*, 305 F. App'x at 891 n. 6 (observing that whether a claimant is deemed disabled for other purposes "is not conclusive of whether she is entitled to social security benefits"). In addition, as discussed, a conclusory statement that a claimant is "disabled" or "unable to work" is not dispositive. 20 C.F.R. §§ 404.1527(e), 416.927(e). Thus, Dr. Lifrak's conclusory statements about disability are not entitled to any special weight.

Furthermore, as the ALJ noted, Dr. Lifrak's opinions did not indicate that Harris' disability would last for a continuous period of at least 12 months. (Tr. 598). A finding of "disability" is warranted only where both the claimant's medically determinable impairment (or combination of impairments) and her inability to work have lasted (or are expected to last) for

14

the requisite twelve month period. *See* 20 C.F.R. §§ 404.1509, 416.909. Dr. Lifrak's opinions indicated that Harris would be unable to work for a 3 month period and were dated January 24, 2008, June 19, 2008, October 7, 2008, December 30, 2008, and June 23, 2009. (Tr. 457, 690-91, 743, 744). These opinions do not total a continuous period of 12 months duration as required by the Act and regulations. 20 C.F.R. §§ 404.1509, 416.909.

Dr. Lifrak's "disability" opinions are not supported by the record. Dr. Lifrak's treatment notes indicate that Harris reported less anxiety and depression when she was compliant with her treatment and taking appropriate medication. (Tr. 590, 683, 708, 733). The record also reflects that Harris was able to independently care for herself, her home, and her children. (Tr. 690). For these reasons, the ALJ set forth legally sufficient reasons not to assign great weight to Dr. Lifrak's opinions.

### 3. The ALJ Set Forth Sufficient Reasons To Discount Dr. Belford's Opinion

Harris asserts that the ALJ improperly gave little weight to Dr. Belford's opinion that she was moderately to markedly impaired in functioning. (D.I. 19 at 11; Tr. 706). As the ALJ discussed, Dr. Belford recorded Plaintiff's complaints and did not note any particularized observations or clinical findings in making this "assessment." (Tr. 590, 706). As discussed, the record demonstrates that Harris' mental state improved when she was compliant with her treatment and took her medication. (Tr. 275-76, 690, 683, 708, 733). The record also reflects that Harris was able to care for herself and her children. (Tr. 690). Accordingly, the ALJ set forth legally sufficient reasons that Dr. Belford's opinion was not entitled to any weight.

### 4. The ALJ Set Forth Sufficient Reasons To Rely On Dr. Simon's

15

**Opinion**

Harris next asserts that the ALJ improperly relied on Dr. Simon's opinion. Dr. Simon opined that, despite her mild to moderate mental functional limitations, Harris remained capable of performing simple work. (Tr. 718-22). Significantly, Dr. Simon opined after Harris' second examination that she "appear[ed] to be malingering given her admitting to a wide range of symptoms that do not correspond to a particular psychiatric diagnosis." (Tr. 717). Based on his examination and review of the medical records, Dr. Simon assessed Harris with a GAF score of 57, indicating mild to moderate symptoms. (Tr. 718). As the ALJ found, Dr. Simon's opinion was consistent with the objective medical evidence that Harris fared better when she was compliant with her medication and treatment regimen and was able to care for herself and her children. Therefore, the ALJ set forth legally sufficient reasons to conclude that Dr. Simon's opinion was entitled to greater weight than the opinions of the other doctors.

### B. The ALJ Properly Evaluated The Credibility Of Plaintiff's Subjective Complaints

In evaluating the credibility of a claimant's subjective complaints, the ALJ considers the conflicts between the claimant's statements and other evidence, including her medical history, medical signs and laboratory findings, and statements by the medical sources. 20 C.F.R. §§ 404.1508, 404.1529(c)(4), 416.908, 416.929(c); *see also Schaudeck v. Comm'r*, 181 F.3d 429, 433 (3d Cir. 1999). A claimant's allegations alone will not establish that she is disabled, and an ALJ need not accept subjective complaints unsupported by the medical evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Although the ALJ must seriously consider a claimant's subjective complaints, it is within the ALJ's discretion to weigh such complaints against the medical

16

evidence, and to reject them. *Schaudeck*, 181 F.3d at 433.

The ALJ evaluated Harris' subjective complaints and found them not entirely credible to the extent they were unsupported by the objective medical evidence and conflicted with Harris' reported activities and abilities. (Tr. 598). The ALJ specifically noted that Harris was entirely independent in her daily activities, drove, had no problems caring for her three young children, and generally got along well with others, even when she was employed. (Tr. 438, 441, 496-500, 510, 593-94, 598, 708, 718). In addition, the ALJ noted that Harris' testimony was not supported by the testimony of her ex-husband and father. Specifically, her testimony that she went days without sleep conflicts with her ex-husband's testimony that she had no particular problems taking care of the house or their children. (Tr. 510, 597). The ALJ also noted that Harris' father's testimony lacked any significant observations that would support that Harris' impairments were as limiting as she alleged. (Tr. 597). Although Harris' father testified that she sometimes acted "very strange," he conceded that his interactions with her were generally limited to telephone calls and that he "didn't know much" about her treatment because she did not talk to him about her alleged problems. (Tr. 496-99). Thus, the ALJ set forth legally sufficient reasons for concluding that Harris' subjective complaints were not entirely credible.

### C. There Is Sufficient Support For The ALJ's Conclusion That Plaintiff Could Perform Her Past Relevant Work Or, Alternatively, Other Work In The National Economy

The ALJ determined that Harris retained the ability to perform simple, unskilled work in accordance with the RFC described above. (Tr. 793-95). Because Harris' RFC did not exceed the demands of her past relevant work, the ALJ properly determined that she could perform her past work as a cleaner/janitor. (Tr. 599, 793). The VE also testified that a hypothetical

individual with Harris' age, education, work background, and physical limitations could do other jobs in the national economy. (Tr. 795).

The ALJ's hypothetical question to the VE accurately reflected Harris' limitations that were medically established and supported by the record. The VE's testimony in response thereto is substantial evidence upon which the ALJ may rely. *See Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). The ALJ was not required to accept the VE's testimony that Harris' subjective complaints, if fully credible, would preclude employment because, as discussed, those complaints were not supported by the evidence as a whole.

## CONCLUSION

For the reasons discussed above, Harris' Motion for Summary Judgment is denied, and the Commissioner's Motion for Summary Judgment is granted. Accordingly, the ALJ's decision is affirmed.